UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HENRY,

       Plaintiff,                           Hon. Robert Holmes Bell

v.                                           Case No. 1:13-CV-846

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## AMENDED REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 40 years of age on his alleged disability onset date. (Tr. 135). He completed the eighth grade and worked previously as a commercial cleaner. (Tr. 19, 32). Plaintiff applied for benefits on May 6, 2010, alleging that he had been disabled since April 20, 2010, due to rheumatoid arthritis and pseudogout. (135-38, 167). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 69-134). On January 19, 2012, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert. (Tr. 27-68). In a written decision dated March 2, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 10-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

On August 18, 2014, the undersigned recommended that the Commissioner's decision be affirmed. (Dkt. #22). Plaintiff objected to this recommendation. (Dkt. #23). On September 19, 2014, the Honorable Robert Holmes Bell remanded the matter to the undersigned for consideration of Plaintiff's objection.

**RELEVANT MEDICAL HISTORY**

On November 2, 2008, Plaintiff was examined by Dr. Aaron Coats. (Tr. 305-06). Plaintiff reported that he was experiencing left knee pain. (Tr. 305). A physical examination revealed the following:

3

> No acute distress. Left lower extremity has moderate effusion. He does have painful range of motion, although he is able to get from about full extension to approximately 45 degrees of flexion until it becomes increasingly painful. His toes are upgoing and downgoing. Sensation is intact to light touch. Pulses are intact in the PT and DP distribution. He does have a slightly warm left knee and there is no redness or streaking erythema around the knee.

(Tr. 305). Plaintiff's left knee was aspirated and an examination of the fluid indicated that Plaintiff was experiencing pseudogout[1] with no evidence of sepsis. (Tr. 305-06).

On May 19, 2010, Dr. Roger Holman completed a report regarding Plaintiff's physical capabilities. (Tr. 184-86). The doctor reported that Plaintiff can stand and/or walk "less than 2 hours in an 8-hour work day" and can "never" lift or carry any amount of weight. (Tr. 185).

On June 2, 2010, Plaintiff was examined by Dr. Andrew Head. (Tr. 326-29). Plaintiff reported that he was experiencing "back spasms and knee pain." (Tr. 326). A physical examination revealed the following:

> Extremities: no clubbing, cyanosis, or edema. Peripheral pulses: normal (2+) bilaterally, capillary refill normal. Back: Bilateral SI joint tenderness, peri-lumbar tenderness, trapezious tenderness, multiple paired trigger points.
>
> Musculoskeletal: His PIPs are tender although not swollen. The left knee is very tender laterally at one point where he has hyperalgesia and withdraws and pain to very light touch there is no warmth or effusion. Total swollen joint count: 0/28, Total tender joint count: 9/28, no synovitis, no effusion.

(Tr. 326).

---

[1] Pseudogout is a form of arthritis characterized by sudden, painful swelling in one or more joints. *See* Pseudogout available at http://www.mayoclinic.org/diseases-conditions/pseudogout/basics/definition/con-20028152 (last visited on May 29, 2014). Pseudogout most commonly affects the knee. This condition is referred to as pseudogout because both gout and pseudogout are caused by crystal deposits within a joint, although the type of crystal differs for each condition. *Id.*

The doctor noted that RF, ANA, and uric acid tests performed in October 2008 were "negative." (Tr. 327). The doctor also observed that testing performed in April 2010 revealed a "normal" sedimentation rate and testing conducted in May 2010 revealed "normal" uric acid. (Tr. 327). X-rays of Plaintiff's lumbar spine and thoracic spine were "normal." (Tr. 327). The doctor concluded that Plaintiff "has low back pain over the SI joints" as well as "a number of trigger points," but Plaintiff "has also developed pain amplification issues without any evidence [of] inflammatory arthritis on exam today." (Tr. 327). Plaintiff's medication regimen was modified.

Plaintiff returned to Dr. Head on June 17, 2010. (Tr. 330-31). Plaintiff reported that he was experiencing pain "all over," but that his left knee bothered him the most. (Tr. 330). A physical examination revealed the following:

> Extremities: no clubbing, cyanosis, or edema. Peripheral pulses: normal (2+) bilaterally, capillary refill normal. Back: bilateral SI joint tenderness, peri-lumbar tenderness, trapezious tenderness, multiple paired trigger points. Musculoskeletal: NO CHANGES, no synovitis. The left knee is very tender laterally at one point where he has hyperalgesia and withdraws and pain to very light touch there is no warmth or effusion. I CAN'T EXPLAIN HIS PAIN FROM ANY INFLAMMATORY ARTHRITIS ON EXAM TODAY.

(Tr. 330). The doctor further concluded:

> He has tender points, poor sleep and pain amplification issues that are consistent with a diagnosis of fibromyalgia. I do not think his body pain and hyperalgesia is related to an inflammatory rheumatic disease. There is no evidence of active lady flaring pseudogout to explain the extreme pain around the lower left knee which is actually more in the soft tissue over the bursa rather than the true knee joint.

(Tr. 330-31). Plaintiff's medication regimen was modified and he was encouraged to participate in a "regular low impact exercise" program. (Tr. 331).

Treatment notes dated June 22, 2010, indicate that Plaintiff's wife contacted Plaintiff's doctor requesting an increase in Plaintiff's Vicodin prescription. (Tr. 334). Plaintiff's wife "was advised that Mike would need to make this request and that he should be seen if he needs any increase in his pain medication." (Tr. 334).

On August 20, 2010, Plaintiff was examined by Dr. Head. (Tr. 352-53). Plaintiff reported that he was experiencing "pain essentially all over." (Tr. 352). Plaintiff also described experiencing "episodes of swelling in various joints like his knees and ankles and these can turn red." (Tr. 352). The doctor noted, however, that he has "never seen this in person on exam." (Tr. 352). A physical examination revealed the following:

> Extremities: no clubbing, cyanosis, or edema. Peripheral pulses: normal (2+) bilaterally, capillary refill normal. Back: bilateral SI joint tenderness, peri-lumbar tenderness, trapezious tenderness, multiple paired trigger points.
>
> Musculoskeletal: no swelling or no synovitis. The left knee again is very tender bilaterally at one point where he has hyperalgesia and withdraws and pain to very light touch there is no warmth or effusion. Tender points elbows, neck, hips, knees.

(Tr. 352).

The doctor concluded that Plaintiff was experiencing fibromyalgia and modified his medication to treat such. (Tr. 353). With respect to Plaintiff's pseudogout, the doctor instructed Plaintiff "to call if [it] flare[s] and I would see him when he has a swollen joint, so far I haven't seen any swelling when he comes here and I can't explain his pain all over from inflammatory arthritis." (Tr. 353).

On September 2, 2010, Plaintiff was examined by Dr. Timothy Gates. (Tr. 358-62). Plaintiff reported that "he has pain all the time regardless of sitting, standing or walking." (Tr. 358).

6

Plaintiff also reported that "he can consistently only lift 8 lbs. before he has pain." (Tr. 358). Plaintiff also reported that "he has crutches which he uses all the time and a left leg knee brace which he also uses all the time due to the ongoing pain in his knee." (Tr. 358). A physical examination revealed the following:

> EXTREMITIES AND MUSCULOSKELETAL: There are no obvious bony deformities. Peripheral pulses are easily palpated and symmetrical. There is no edema. There is no evidence of varicose veins. The patient did have pain with palpation of the bilateral shoulder joints, cervical spine, lumbar spine, bilateral sacroiliac joints on exam today. He also reports burning pain in his left knee. He states he has pain on all aspects of his left knee including palpation on the posterior, anterior, superior and inferior to the patella and both lateral aspects of the left knee cause him severe pain. He states that moving the hip joint causes severe pain in his knees even with a knee brace on that he is unable to do it without assistance and insisted his wife help him with moving his leg off the examination table. He also reports that movement[,] both dorsi-flexion and plantar flexion[,] of the left ankle also induce left knee pain. He also reports any movement with the left toes induced left knee pain. He also reports that touching of the skin over any dermatome of the left lower extremity causes left knee pain. Range of motion of all joints checked is full. There is no erythema or effusion of any joint. Grip strength is normal. The hands have full dexterity.

(Tr. 360).

> NEURO: Strength is 5/5 throughout. Sensation was noted to be intact throughout. Cranial nerves II through XII are grossly intact. The head is normocephalic with no evidence of nuco (sic) rigidity or lymphadenopathy. Motor and sensory function remains intact. The patient refused deep tendon reflexes testing over his left patella and the remainder of reflexes is 2/4 throughout. No disorientation is noted.

(Tr. 361). The doctor, however, also observed the following:

> The patient is alert and orientated x3 under no apparent distress, speech is non-dysarthic and answers are appropriate. Hearing appears normal. The patient was witnessed to ambulate and insisted on using

> his left knee brace and his crutches. He made an effort to explain why he was using his crutches and what would happen if he did not use them. However while ambulating with his crutches he is noted to be using the crutches improperly and does not appear to be putting weight on the crutches but rather to be using his arms to press himself up and off his crutches. He exhibits in the examination room an ability to only put a small amount of weight on his foot making several notes to show the doctor how he is only able to lightly touch his left foot to the floor as that is the only amount of pressure he can withstand due to his ongoing left knee pain. Despite being able to lift his leg while seated on the exam table he is noted to have the ability to swing his left hip and does not report difficulty with doing this or moving the left hip with ambulation. He was also witnessed while leaving the building to place significantly more weight on his left foot and was witnessed to stand on both feet with his arms bent while using his crutches; however with still no weight being placed at the axilla. He was also witnessed to stand next to his car while resting his arms on the door and roof of the car in a resting fashion while stand[ing] on both feet. He appeared to be doing this without a great deal of pain and exhibiting much less pain than what was exhibited in the examination room. The differences in the patient's presentation are curious and suggestive of symptom embellishment. This is also true of the report that movement of the small toes induces knee pain and that touching of every dermatome of the left leg also induces knee pain.

(Tr. 359).

On October 5, 2010, Dr. Holman completed a report regarding Plaintiff's physical capabilities. (Tr. 370-71). The doctor reported that Plaintiff can "sometimes," defined as "1-2 hours in an 8-hour workday," sit, stand, bend, reach over his shoulder, grasp, and push/pull. (Tr. 370). The doctor also reported, however, that Plaintiff can "never" walk or lift any amount of weight. (Tr. 370).

On December 30, 2011, Dr. Holman provided a sworn statement for Plaintiff's attorney. (Tr. 494-97). The doctor stated that Plaintiff "should elevate his bilateral extremities on a daily basis to alleviate the swelling" and that "there are typically days of the month when Mr.

Henry is required to ambulate on crutches." (Tr. 496). The doctor also stated that "there is absolutely no evidence to suggest malingering or an attempt to exaggerate symptoms." (Tr. 496).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) inflammatory arthritis; (2) fibromyalgia; and (3) pseudogout, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-13). The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently; (2) he can stand and/or walk for six hours during an 8-hour workday, with normal breaks; (3) he can sit for six hours during an 8-hour workday, with normal breaks; (4) he cannot climb ladders, ropes, or scaffolds; (5) he cannot kneel, crouch, or crawl; and (6) he can only occasionally stoop or climb ramps/stairs. (Tr. 13).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis

added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 72,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 61-63).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.          **The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence**

Plaintiff asserted a single issue on appeal, that the ALJ improperly discounted the opinions expressed by his treating physician, Dr. Holman.  For example, Dr. Holman reported that Plaintiff can stand and/or walk "less than 2 hours in an 8-hour work day" and can "never" lift or carry any amount of weight.  The doctor reported that Plaintiff can "sometimes," sit, stand, bend, reach over his shoulder, grasp, and push/pull, but can "never" walk or lift any amount of weight.  Dr. Holman also reported that Plaintiff "should elevate his bilateral extremities on a daily basis to alleviate the swelling" and that "there are typically days of the month when Mr. Henry is required

to ambulate on crutches." The ALJ afforded only "very limited weight" to Dr. Holman's opinions. (Tr. 18-19).

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In previously assessing the ALJ's decision to discount Dr. Holman's opinion, the undersigned quoted the ALJ's rationale for such which was as follows:

> On a form used by the State of Michigan for welfare and Medicaid program purposes, Dr. Holman noted that he first examined the claimant on March 16, 2010, and he had a history of gout, arthritis, and diffuse joint pain. He offered that the claimant's condition was deteriorating, he had limitations that were expected to last beyond 90 days, that he could never lift or carry any weight at all, he could stand and/or walk less than two hours per day, needed to use a crutch for ambulation, could use his upper extremities for reaching, pushing,

pulling, grasping, or manipulating, and could not operate foot controls.

Dr. Holman shared another opinion on October 5, 2010, that the claimant could never walk, could only sit or stand for one to two hours per day, could never lift or carry any weight, could never climb stairs or other items, could never squat, crawl or kneel, and could only sometimes (e.g. one to two hours per day) reach, grasp, or push/pull. Further, he stated the claimant would need the option to sit or stand at will, would have pace and concentration limitations, would miss three or more days of work per month, and was best suited for only part-time work.

The undersigned can give only very limited weight to these opinions. The latter is provided in a format designed to elicit a "disabling" opinion. It is not supported by Dr. Holman's or Dr. Head's clinical examinations. Dr. Holman answered "yes" to the question "Fibromyalgia has been diagnosed with pressure points (ARA standards)". If such a clinical result has been obtained, the claimant has not shared it. Both Dr. Holman and Dr. Head on more than one occasion have indicated the lack of clinical support for the claimant's allegations. He says he has been unable to show his allegedly extremely disclosed and inflamed leg to either doctor because of the cost of an office visit. It is hard to accept his lack of urgency to prove his allegation in an effort to obtain proper diagnosis and possible relief.

The claimant's attorney presented a sworn statement from Dr. Holman dated December 30, 2011. Undoubtedly, the doctor's declarations of his training, his methodology, and the clinical basis for diagnosing the pseudo-gout are accurate. His opinion about the effects of pseudo-gout on the claimant, however, cannot be given much weight for the same reasons cited above. His own notes, as well as those of Dr. Head, do not cite any clinical evidence or personal observation of the alleged extreme flare-ups. Dr. Holman may not be aware of Dr. Head's expressed suspicions of "amplification". These opinions are unsupported and conclusory.

In sum, the above residual functional capacity assessment is supported by the evidence that shows the claimant has been clinically diagnosed with conditions that induce pain and preclude performance of his past work, but this is not the sole test for Social Security disability.

(Tr. 18-19).

The undersigned concluded that the ALJ's rationale complied with the relevant legal standard and was supported by substantial evidence. In reaching this conclusion, the undersigned stated that "[a]s the ALJ correctly observed, Dr. Holman's opinions enjoy no support in the record and are contradicted by substantial medical evidence, including first-hand evidence that Plaintiff was exaggerating his symptoms." As the language quoted above reveals, one of the items that the ALJ mentioned in discounting Dr. Holman's opinion was his conclusion that "Dr. Holman may not be aware of Dr. Head's expressed suspicions of 'amplification.'" (Tr. 19).

In his objection to the previously issued Report and Recommendation, Plaintiff argues that "[t]he ALJ discounted Dr. Holman's treating source opinion based on a mischaracterization of treating rheumatologist, Dr. Head's treatment records." Specifically, Plaintiff argues that the ALJ erroneously concluded that "pain amplification" equates to "symptom exaggeration." Plaintiff asserts that the treatment record in question concerns a June 17, 2010 examination of Plaintiff by Dr. Head.[3] (Tr. 330-31).

Plaintiff reported that he was experiencing pain "all over," but that his left knee bothered him the most. (Tr. 330). A physical examination revealed the following:

> Extremities: no clubbing, cyanosis, or edema. Peripheral pulses: normal (2+) bilaterally, capillary refill normal. Back: bilateral SI joint tenderness, peri-lumbar tenderness, trapezious tenderness, multiple paired trigger points. Musculoskeletal: NO CHANGES, no synovitis. The left knee is very tender laterally at one point where he has hyperalgesia and withdraws and pain to very light touch there is no warmth or effusion. I CAN'T EXPLAIN HIS PAIN FROM ANY INFLAMMATORY ARTHRITIS ON EXAM TODAY.

---

[3] The undersigned made reference to this examination above, as well as in the previous Report and Recommendation.

(Tr. 330).

> The doctor further concluded:
>
> **He has tender points, poor sleep and pain amplification issues that are consistent with a diagnosis of fibromyalgia.** I do not think his body pain and hyperalgesia is related to an inflammatory rheumatic disease. There is no evidence of active lady flaring pseudogout to explain the extreme pain around the lower left knee which is actually more in the soft tissue over the bursa rather than the true knee joint.

(Tr. 330-31) (emphasis added).

With respect to his diagnosis of psedugout, the doctor also stated, "[n]o evidence of flare, this does not explain his pain in the knee now, **he has hyperalgesia and pain amplification**." (Tr. 331) (emphasis added). Plaintiff's medication regimen was modified and he was encouraged to participate in a "regular low impact exercise" program. (Tr. 331).

The undersigned was ordered to consider Plaintiff's "pain amplification argument." For the reasons discussed below, the undersigned is not persuaded by such and again concludes that the ALJ's rationale for discrediting Dr. Holman's opinions complies with the appropriate legal standard and is supported by substantial evidence. Plaintiff's argument is that the ALJ misconstrued the meaning of the phrase "pain amplification" as used by Dr. Head. Plaintiff suggests that the term "pain amplification" refers to the "increased sensitivity to pain" an individual with fibromyalgia suffers. Plaintiff's argument suffers from several shortcomings.

First, Plaintiff has failed to identify anything in the record that supports his interpretation of the phrase "pain amplification." Instead, Plaintiff's interpretation is based on evidence that Plaintiff first submitted to this Court. (Dkt. #19, 23). It is well established, however, that this Court, in evaluating the ALJ's decision, can only consider the evidence that was presented

to the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). While Plaintiff could have requested this matter be remanded for consideration of the new evidence on which his objection rests, he has failed to do so, thereby waiving any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waives any arguments that are not developed"). More importantly, Plaintiff had the opportunity to present the evidence in question to the ALJ, but failed to do so.

Plaintiff argues that "[n]o reasonable person could interpret Dr. Head's notes regarding pain amplification to indicate malingering, as ALJ Prothro apparently alludes." The Court disagrees. The word "amplify" (or "amplification") is generally understood to be a synonym for the word "exaggerate" (or exaggeration). *See, e.g.,* Exaggerate, available at http://dictionary.reference.com/browse/exaggerate (last visited on September 24, 2014); Exaggerate, available at http://www.thesaurus.com/browse/exaggerate (last visited on September 24, 2014); *see also*, *Manning v. Astrue*, 2012 WL 4127643 at *4 (D. Vt., Aug. 17, 2012) (equating "pain amplification" with "symptom magnification"); *Styslowsky v. Astrue*, 2012 WL 1041457 at *5 (W.D.N.Y., Mar. 28, 2012) (same).

Furthermore, an examination of Dr. Head's June 17, 2010 treatment notes actually supports the ALJ's interpretation of the phrase in question. As noted above, the doctor opined that Plaintiff's pain was not the result of an inflammatory rheumatic disease. (Tr. 331). The doctor also noted that the objective evidence was inconsistent with Plaintiff's allegations of knee pain. (Tr. 331). The doctor then stated, "[n]o evidence of flare, this does not explain his pain in the knee now, he has hyperalgesia and pain amplification." (Tr. 331). In other words, the doctor, after stating that the objective evidence did not explain Plaintiff's subjective allegations of pain, reported the presence

17

of "pain amplification." Understood in this context, equating "pain amplification" with "symptom magnification" seems reasonable, especially in the absence of any opinion or evidence suggesting a contrary interpretation.

In sum, the ALJ reasonably interpreted "pain amplification" as calling into question Plaintiff's credibility and, by extension, the credibility of the extreme opinions proffered by Dr. Holman. The ALJ's interpretation is consistent with standard usage of the words in question. Plaintiff had the opportunity to clarify the meaning of this particular phrase by submitting evidence to the ALJ, but failed to do so. This shortcoming is not insignificant considering that Plaintiff bears the burden to establish that he is disabled. *See* 42 U.S.C. § 423(d)(5)(A)

Moreover, even if the Court assumes that Plaintiff's interpretation of the phrase "pain amplification" is consistent with what Dr. Head intended, such hardly establishes that Plaintiff is impaired to the extent asserted by Dr. Holman. As the Sixth Circuit recognizes, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to benefits." *Vance v. Commissioner of Social Security*, 260 Fed. Appx. 801, 806 (6th Cir., Jan. 15, 2008). While "[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working[,] most do not and the question is whether [the claimant] is one of the minority." *Id.* (citation omitted). As discussed above, the evidence of record does not suggest that Plaintiff is one of the few fibromyalgia sufferers who is rendered disabled or impaired to an extreme degree, thus supporting the ALJ's decision to discount Dr. Holman's opinions.

Finally, as the quoted language above makes clear, the ALJ's rationale for discounting Dr. Holman's opinions was premised on multiple shortcomings and deficiencies. The observation that "Dr. Holman may not be aware of Dr. Head's expressed suspicions of "amplification," was by

no means the lynchpin of the ALJ's analysis, but was instead merely one prong of a multi-prong refutation of the doctor's opinion. Even if it is assumed that the ALJ misinterpreted the "pain amplification" reference, something which Plaintiff has not established, the ALJ's rationale for discounting Dr. Holman's opinions is nevertheless supported by substantial evidence.

As the ALJ observed, Plaintiff's care providers have "indicated the lack of clinical support for [Plaintiff's] allegations." (Tr. 305, 320-21, 326-29, 330-31, 352-53, 358-62). Dr. Head instructed Plaintiff to participate in a "regular low impact exercise" program, a recommendation that is certainly at odds with Dr. Holman's opinion that Plaintiff experiences extreme pain and limitation. Dr. Gates observed Plaintiff engaging in "symptom embellishment," thereby discrediting Dr. Holman's opinion and lending further support to the ALJ's interpretation of the phrase "pain amplification." (Tr. 359). In sum, the ALJ's conclusion to afford less than controlling weight to Dr. Holman's opinions complies with the relevant legal standard and is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                Respectfully submitted,

Date:  September 30, 2014         /s/ Ellen S. Carmody
                     ELLEN S. CARMODY
                     United States Magistrate Judge